UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SURPLEC, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | CV-07-55-B-W |
| | ) | |
| MAINE PUBLIC SERVICE CO., | ) | |
| UPC WIND MANAGEMENT, LLC, and | ) | |
| EVERGREEN WIND POWER, LLC | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

The Court denies Surplec, Inc.'s motion for preliminary injunction, because it failed to establish irreparable injury.

## I.   BACKGROUND

Surplec, Inc. (Surplec)[1] initiated this law suit against Maine Public Service Co. (MPSC),[2] UPC Wind Management, LLC (UPC),[3] and Evergreen Wind Power, LLC (Evergreen),[4] alleging breach of contract, fraudulent misrepresentation, negligent misrepresentation, conversion, and unjust enrichment relating to its sale and delivery of a customized transformer.  *See Compl. and Jury Trial Demand* (Docket # 1) (*Compl.*).  It demands $227,795.75 in compensatory damages, incidental damages, and $2,500,000 in punitive damages.[5]  With the filing of its Complaint, Surplec moved for a preliminary injunction to prevent the Defendants from using the transformer

---

[1] Surplec is a Montreal-based company "involved in the design, refurbishment and sale of high and medium voltage electrical equipment, including transformers, breakers and bushings." *Compl.* ¶ 3.
[2] MPSC is based in Maine and is in the business of "electricity transmission and distribution." *Compl.* ¶ 4.
[3] UPC is incorporated in Massachusetts and is "engaged in the business of wind power production." *Compl.* ¶ 5.
[4] Evergreen is a Delaware corporation that is also in the business of generating wind energy. *Compl.* ¶ 6.
[5] In its complaint, Surplec also includes a catchall provision at the end of its "relief requested" to include "such other and further relief as the Court deems just and proper, including injunctive relief." *Compl.* at 13.

"until a final hearing and determination of the merits of this action or further order of this Court." *Pl.'s Mot. of Prelim. Inj.* at 1-2 (Docket # 4-2) (*Pl.'s Mot.*).

In this diversity action, Surplec alleges that it contracted to sell a transformer to MPSC for MPSC's wind power operation. *Compl.* ¶¶ 11, 12. The contract price for the transformer was $398,000. *Id.* Under the contract, MPSC agreed to pay Surplec in three installments prior to shipment. *Id.* ¶ 13.[6] MPSC paid the first two installments, and on November 30, 2006, MPSC faxed Surplec a copy of a check dated November 30, 2006 in the amount of $219,000. *Id.* ¶¶ 14, 17. Accompanying the check was correspondence stating that the check would be sent via Federal Express that day. *Id.* ¶ 18. Relying on the age-old promise that the check was in the mail, Surplec tendered the transformer for shipment to MPSC. *Id.* ¶ 19.

The check never arrived. *Id.* ¶ 20. Despite two other representations by MPSC that it was sending payment, it never did. *Id.* ¶¶ 20, 21. In reliance on these subsequent representations, Surplec sent MPSC "bushings and accessories" to the transformer. *Id.* ¶ 22. By letter dated February 5, 2007, MPSC informed Surplec that the transformer "is not merchantable, fit and sufficient for the particular purposed intended and free from defects," and that MPSC planned to hold the transformer until it was able to obtain a replacement. *Id.* ¶ 24. However, it installed the equipment and made "certain adjustments and/or modifications to the Transformer without advising Surplec in advance." *Id.* ¶¶ 24, 27.

According to the Complaint, the transformer is currently generating energy at the Mars Hill site. *Id.* ¶ 29. Nevertheless, MPSC still has not "paid the balance of the purchase price or any incurred shipping charges despite [its] obligation to do so pursuant to the Purchase Order

---

[6] The first two payments were to represent 25% of the purchase price, and the final payment would represent the remaining 50%.

and despite [its] express representations that a check comprising payment had been issued and would be sent to Surplec." *Id*. ¶ 30.

Surplec claims MPSC breached the contract, made several intentional and/or negligent misrepresentations, and wrongfully obtained possession of the transformer. In addition to the conversion count against all Defendants, *Compl*. ¶¶ 60-69, Surplec alleges one count of unjust enrichment against Evergreen, *Compl*. ¶¶ 70-75. Surplec seeks compensatory and punitive damages for the breach of contract, misrepresentations, conversion, and unjust enrichment. *Id*. ¶ 75. There is also a catch-all request for "other and further relief as the Court deems just and proper, including injunctive relief." *Id*.

## II.    STANDARD OF REVIEW

This Court analyzes a request for a preliminary injunction through application of the following four well-established factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and, (4) the effect (if any) of the court's ruling on the public interest.

*Esso Std. Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006) (quoting *Bl(a)ck Tea Soc'y v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004)); *see also Northwest Bypass Group v. United States Army Corps of Eng'rs*, 470 F. Supp. 2d 30, 36 (D.N.H. 2007). The party seeking relief bears the burden of demonstrating that each factor "weigh[s] in its favor." *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003).

## III.    DISCUSSION

The Court begins with the second factor: whether the moving party would suffer irreparable harm absent a preliminary injunction. In general, a demonstration of irreparable

harm is a "necessary threshold showing for awarding preliminary injunctive relief." *Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 73 (1st Cir. 2004). Even if a court finds the moving party is likely to succeed on the merits, the failure to show irreparable harm may preclude a preliminary injunction. *See Matrix Group Ltd. v. Rawlings Sporting Goods Co.*, 378 F.3d 29, 33 (1st Cir. 2004). Surplec fails to make this threshold showing.

The First Circuit explained: "The necessary concomitant of irreparable harm is the inadequacy of traditional legal remedies. The two are flip sides of the same coin: if money damages will fully alleviate harm, then the harm cannot be said to be irreparable." *K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 914 (1st Cir. 1989); *see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000) ("It is settled beyond peradventure that irreparable harm can consist of 'a substantial injury that is not accurately measurable or adequately compensable by money damages.'") (citation omitted).

In addition, the irreparable harm must be concrete; that is, it "must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." *Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). While "the destruction of a business is an irreparable injury which can be appropriately remedied with injunctive relief," it is not appropriate "where the plaintiff will experience only a partial loss of business short of complete destruction." *Augusta News Co. v. News America Pub., Inc.*, 750 F. Supp. 28, 32 (D. Me. 1990); *see also Matrix Group,* 378 F.3d at 35.

According to Surplec, the essence of its irreparable harm is that the "ongoing operations at the Mars Hill Project have caused and will continue to cause wear and tear to the customized

Transformer." *Pl.'s Mot.* at 18.[7]  But, Surplec's alleged damages, including wear and tear on the customized transformer, are susceptible to economic calculation.  This is, as Judge Hornby once said, "a classic damage case with a damage remedy."  *See Matrix Group Ltd.*, 378 F.3d at 33 (quoting Judge Hornby).  It is well settled that economic damages, standing alone, do not constitute irreparable injury.  *Id.* at 33-35; *McDonough v. Trs. of Univ. Sys. of New Hampshire*, 704 F.2d 780, 784 n.2 (1st Cir. 1983); *see Maine Cent. R.R. Co. v. Bhd. of Maint. of Way Employees*, 646 F. Supp. 367, 371 (D. Me. 1986).

Surplec's second contention is that "there is no guarantee that at the time judgment is entered Defendants will be solvent and able to pay." *Pl.'s Am. Combined Reply in Further Supp. of Pl.'s Mot. for Prelim. Inj.* at 11 (Docket # 29) (*Pl.'s Reply*).  However, "[a]lleging a mere possibility that a defendant might not be able to ultimately satisfy a judgment because, at the time such judgment is entered, he may not have assets is not sufficient to demonstrate irreparable injury for preliminary injunction purposes."  *Francis v. Pulley*, No. 06-CV-480-JM, 2007 U.S. Dist. LEXIS 2393, at *12 (D.N.H. Jan. 10, 2007); *see also Micro Signal Research, Inc. v. Otus*, 417 F.3d 28, 31 (1st Cir. 2005).  In *Micro Signal Research*, the First Circuit noted that the "story is quite different where there is a strong indication that the defendant may dissipate or conceal assets."  *Id.*  But, there is no such evidence here.

To the contrary, Surplec's concern about the Defendants' financial wherewithal is grounded exclusively on statements the Defendants themselves made about the potential impact

---

[7] Surplec cites *Conners v. Int'l Harvester Credit Corp.*, 447 A.2d 822 (Me. 1982), for the proposition that "plaintiff's default under an installment sales contract entitled seller to preliminary injunction enjoining purchaser from continued use and operation of the purchased tractor-truck." *Pl.'s Mot.* at 18.  In *Conners*, the Maine Supreme Judicial Court vacated a trial court order, which had enjoined the plaintiff from using a tractor-trailer that the plaintiff had already returned to the defendant.  Because there was no longer a "justiciable controversy," *Conners* concluded the Superior Court "could not order a preliminary injunction."  *Conners,* 447 A.2d at 824.  *Conners* is inapposite.

5

an injunction would have on their ability to stay in business.[8] Thus, the Plaintiff could suffer irreparable injury, but only if the Court grants its desired relief, hardly a convincing argument for the sought-after relief. The circularity of Surplec's argument is confounding, but simply said, the Plaintiff cannot generate its own irreparable injury by virtue of the relief sought in its own motion. The preliminary injunction standard weighs "the potential for irreparable harm [to the movant] if the injunction is denied," *Esso Std. Oil Co.*, 445 F.3d at 18, not the potential for irreparable harm to the movant if the injunction is granted.

Surplec has failed with respect to the threshold showing of irreparable injury; the Court need proceed no further.

## IV.    CONCLUSION

The Court DENIES Surplec's motion for preliminary injunction (Docket # 4).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 18th day of July, 2007

---

[8] Surplec quotes Evergreen and UPC as saying that the inability to generate electricity would be a "death knell." *Pl.'s Reply* at 11.

6